IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL ACTION NO.: 3:17-cv-00113-RJC-DCK

| | | |
|---|---|---|
| JAMES B. BLAZICK, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT |
| vs. | ) ) ) | |
| LEAD VISION, LLC. | ) ) ) | |
| Defendant. | ) ) | |

## I.      INTRODUCTION

Named Plaintiff James B. Blazick ("Blazick") individually on behalf of himself and Opt-in Plaintiff Robert Reese ("Reese") (collectively "Plaintiffs"), and Defendant Lead Vision, LLC ("LeadVision") have reached a Settlement in the above-captioned lawsuit (the "Action").[1] Because the Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties, Plaintiffs request that the Court enter the proposed Order, submitted with Plaintiffs' Consent Motion for Approval of Fair Labor Standards Act Settlement, approving the Settlement, including payment of reasonable attorneys' fees and costs.  Defendant consents to the Proposed Order.

---

[1] The Settlement is memorialized in the Settlement Agreement and Release ("Settlement") attached as Exhibit 1.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Nature of the Claims

On March 7, 2017, Blazick filed this action, on behalf of himself and others similarly situated, alleging that LeadVision violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et. seq.* by failing to pay Blazick and other account executives overtime in accordance with Section 207 of the FLSA.  Blazick alleged that LeadVision misclassified account executives as exempt from the overtime provisions of the FLSA and failed to pay an overtime premium for all hours worked in excess of 40 in a workweek.

### B.  Motion Practice

On May 1, 2017, LeadVision filed its Answer to the Complaint, denying all liability and asserting affirmative defenses.  (Dkt. No. 8).  On July 20, 2017, the Parties filed their Agreed Stipulation and Order Concerning Collective Action Lawsuit and Notice ("Agreed Stipulation"), which sought Court approval of the parties' agreement to stipulate to conditional certification and notice of a collective action under the FLSA.  On March 6, 2018, the Court approved the Agreed Stipulation.  (Dkt. No. 22).  Notice of the FLSA collective action was sent to fourteen potential opt-ins and one individual opted into the litigation.  *See* Dkt. No. 29, Declaration of Philip J. Gibbons, Jr. in Support of Consent Motion for Approval of Fair Labor Standards Act Settlement ("Gibbons Decl."), ¶12.

### C.  Discovery and Settlement History

The Parties agreed to voluntarily exchange discovery relating to time and pay records for Blazick and Reese.  (Gibbons Decl. ¶13).  On June 26, 2018, Plaintiffs provided LeadVision with their analysis of alleged damages and made a settlement demand to LeadVision's counsel. (*Id.* ¶14).  On June 29, 2018, LeadVision responded to Plaintiffs' analysis and settlement

2

demand.  (*Id.*).  The Parties disputed the number of overtime hours worked by Blazick and

Reese, as well as whether Plaintiffs were entitled to liquidated damages.  (*Id.*).  The Parties

negotiated in good faith, exchanged several settlement proposals, and on July 7, 2018 reached

the Settlement that is memorialized in Exhibit 1.  (*Id.*).

## III.  SUMMARY OF THE SETTLEMENT TERMS

LeadVision has agreed to pay $32,500.00 to settle the claims in this Action, which will be

used to provide for: (i) settlement payments to Blazick and Rees and (ii) attorney's fees and costs

to Plaintiffs' counsel.  From the $32,500.00 settlement fund, $15,500.00 will be allocated to

Blazick and Reese as unpaid overtime, liquidated damages, and additional consideration for

providing a full release of claims; $16,000.00 will be allocated to Plaintiffs' counsel as attorneys'

fees; and $1,000.00 will be allocated as litigation costs and expenses to reimburse Plaintiffs'

counsel for costs and expenses advanced on behalf of Plaintiffs.  (*Id.* ¶¶15-16; Ex. 1 at ¶1).

Pursuant to the terms of the Settlement, Blazick will receive $8,060.00 and Reese will

receive $7,440.00.   (*Id.*).  The overtime portion of the settlement proceeds is being distributed

pro rata based on the number of weeks worked by each individual.[2] (Gibbons Decl. ¶16).  In

exchange for the additional monetary consideration, Blazick and Reese will each provide a

general release of all claims against LeadVision. (Ex. 1 at ¶2).  A full version of the general

release is set forth in Section 3 of the Settlement.[3]  (*Id.* ¶3).

## IV.  THE COURT SHOULD APPROVE THE SETTLEMENT

The standard for approval of an FLSA settlement is straightforward:  a district court

---

[2] LeadVision employed Blazick from November 14, 2016 to March 2, 2017.  LeadVision
employed Reese from August 24, 2016 to November 30, 2016.  (Gibbons Decl. ¶16).
[3] The undersigned counsel obtained authorization from Blazick and Reese to agree to a general
release as condition of settlement.

should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Latham v. Branch Banking and Trust Co.,* 2014 WL 464236, at \*1 (M.D.N.C. Jan. 14, 2014). In evaluating whether a settlement is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to potential recovery. *Lamascolo v. Brinckerhoff, Inc.*, 2009 WL 3094955 at \*10 (E.D. Va. Sept. 28, 2009).

As a general rule, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055 at \*5 (E.D. Va. Aug. 7, 2009).

### A.    The Parties Have a *Bona Fide* Dispute

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over FLSA provisions. *Lomascolo*, 2009 WL 3094955 at \*16 (citing *Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Here, Plaintiffs allege that LeadVision misclassified them as exempt from the overtime provisions of the FLSA and failed to pay them an overtime premium for all hours worked in excess of forty in a workweek. (Gibbons Decl. ¶11). LeadVision denies this allegation and maintains that it properly paid

4

Plaintiffs under the FLSA. (*Id.*). In addition, without conceding liability, Defendant disputes the number of overtime hours Plaintiffs allege they worked each week and maintains that Plaintiffs are not entitled to liquidated damages. (*Id.* at ¶14).

If Plaintiffs ultimately prevailed, Defendant would be faced with the prospect of a monetary verdict in favor of Plaintiffs, as well as the obligation to pay significant litigation fees and costs. If Defendant ultimately prevailed, Plaintiffs faced dismissal of their claims and no recovery of any kind. Similarly, even if Plaintiffs prevail, their recovery is subject to reduction based on the determination of the number of hours of overtime worked by Plaintiffs and the determination regarding whether Plaintiffs are entitled to liquidated damages. Accordingly, the Court should decide that a *bona fide* dispute exists between the Parties.

### B. The Settlement is Reasonable, Adequate and Fair

The Settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and amounts due, assuming FLSA violations had occurred. During the litigation and settlement of this action, Plaintiffs were represented by counsel experienced in handling wage and hour class and collective actions. (Gibbons Decl. ¶¶2, 4-5). The settlement provides relief to Plaintiffs and eliminates the inherent risks both sides would bear if this case continued. Under these circumstances, there is a presumption of fairness. *See Lomascolo*, 2009 WL 3094955 at *10 (noting that "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable. . . A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.")

## 1. The Parties' Exchanged Sufficient Discovery to Reach a Fair Settlement of this Action

Although the Parties did not engage in formal discovery, they voluntarily shared payroll and time information available for Plaintiffs. (Gibbons Decl. ¶13). Based on this information, as well as estimates by Blazick and Reese regarding the number of hours worked each week, Plaintiffs were able to review, analyze and formulate potential damage calculations under the FLSA. (*Id.*). Utilizing these calculations, Plaintiffs concluded they had sufficient information concerning Plaintiffs' claims and Defendant's defenses from which to reach a fair settlement of this matter. Accordingly, the amount of discovery supports approval of the settlement. (*Id.*).

## 2. The Ultimate Outcome of this Action is Unknown

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. Resolution of the issues in dispute in this Action (*i.e.* whether Plaintiffs were properly classified as exempt under the FLSA, the number of hours worked each week, and the availability of liquidated damages) would require substantial time and resources, including dispositive motions and the potential of a multiple-day trial, as well as possible appeals and post-trial motions. Although these issues remain unresolved, counsel for the Parties had sufficient information to assess the respective strengths and weaknesses of their case and reach the conclusion that the Settlement is in the best interests of the Parties. (*Id.*).

## 3. The Settlement Was Fairly and Honestly Negotiated

The Settlement reached by the Parties is the product of good faith negotiations. (*Id.* ¶14). The Settlement was reached only after the Parties exchanged voluntary discovery and conducted several rounds of demands and offers. (*Id.*). The Settlement puts money in the hands of Plaintiffs who chose to participate in the litigation. It is notable that this is not a Rule 23 class

action settlement that impacts absent class members.  To the contrary, only Blazick and Reese, who voluntarily agreed to the terms of the Settlement, will release claims against LeadVision.

### 4.      Plaintiffs Were Represented by Experienced Counsel

Plaintiffs had the benefit of legal counsel with extensive knowledge and experience in wage and hour litigation. (*Id.* ¶¶2, 4-5).  The undersigned counsel was familiar with the facts and law in this case and has negotiated numerous FLSA collective action settlements. (*Id.*).

### 5.      Plaintiffs' Attorney and Plaintiffs Support the Settlement

In Plaintiffs' counsel's view, the Agreement provides substantial benefits to Plaintiffs, especially when one considers the attendant risks, difficulties, delays and uncertainties of litigation, trial and post-trial proceedings.  Moreover, Plaintiffs each participated in negotiating the Settlement and expressly authorized the undersigned counsel to accept the Settlement.[4]

### 6.      The Value of the Settlement is Significant

Finally, as set forth above, the probability of Plaintiffs' success on the merits and other ancillary issues is hotly disputed by the Parties.  The Parties acknowledge the strengths and weaknesses of their respective positions.  Ultimately, the money allocated to Plaintiffs for alleged unpaid overtime and liquidated damages provides Plaintiffs with a reasonable approximation of the overtime and liquidated damages allegedly owed to them by LeadVision. In addition, Plaintiffs are receiving additional compensation in exchange for providing LeadVision with a complete release of claims.  Finally, because LeadVision disputes the number of overtime hours worked by Plaintiffs and the availability of liquidated damages, any potential

---

[4] Although Reese, as an opt-in Plaintiff, authorized Named Plaintiff Blazick to represent him in this FLSA collective action, Reese was fully apprised of the negotiations and expressly authorized acceptance of the settlement amount allocated to him in exchange for a full release of claims. (Gibbons Decl. ¶13).

recovery could be reduced if Plaintiffs did not prevail on their estimated number of overtime hours worked per week or their argument that they were entitled to liquidated damages. Ultimately, the value of the settlement is significant. As set forth above, Plaintiffs could have prevailed at trial, yet received a monetary reward that is much smaller than that negotiated via settlement. For the reasons set forth above, the Court should approve the settlement.

## V.      THE COURT SHOULD APPROVE PAYMENT OF ATTORNEYS' FEES AND LITIGATION EXPENSES TO PLAINTIFFS' ATTORNEYS

The FLSA provides that in a collective action, a court shall "allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. 216(b). The Fourth Circuit has prescribed a three-step process for determining an appropriate fee award: (1) calculation of a lodestar amount by multiplying the number of attorney hours reasonable expended on the litigation by a reasonable rate; (2) subtraction of any fees included in the amount for hours spent on unsuccessful claims unrelated to the successful ones; and (3) further adjustment to the resulting total based on a plaintiff's degree of success. *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 675-76 (4th Cir. 2015) (citing *McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013). Multiplication of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate equals the lodestar. *Robinson v. Equifax Info. Servs. LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

The Court's assessment as to the reasonableness of the hours and rates claimed in the lodestar calculation is guided by the twelve *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) factors:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the

8

amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees in similar cases.

*Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n.28 (4th Cir. 1978).

## A.     Calculation of the Lodestar Amount

### 1.     Hours of Work Expended

As of August 7, 2018, Plaintiffs' attorneys reasonably and necessarily billed 53.4 hours of legal work, incurring fees in the amount of $25,997.00.  (Gibbons Decl. ¶19).[5]  This amount reflects the deletion of numerous attorney billings that were deemed duplicative in nature, which reduced the total by approximately $4,000.00.  The work performed for these fees includes but is not limited to: (1) pre-suit investigation; (2) preparation of pleadings; (3) preparation of damage calculations; (4) interaction with Plaintiffs and potential opt-in plaintiffs; and (5) negotiating the terms of the Settlement; and (6) preparing settlement documents.

Philip J. Gibbons, Jr. billed the majority of the hours on this file.  (Gibbons Decl. ¶19). Mr. Gibbons had primary file responsibility on the case and was responsible for leading case strategy and negotiating settlement.  Mr. Gibbons has extensive experience in the wage and hour arena. (*Id.*).  This experience allowed Plaintiffs to obtain an excellent result in an effective and efficient manner.  (*Id.*). Mr. Gibbons' experience allowed the parties to stipulate to conditional certification, thereby avoiding the motion practice typically associated with this process.  (*Id.*). Similarly, Mr. Gibbons' experience resulted in a settlement without the need for expensive

---

[5] Plaintiffs were represented jointly by Gibbons Leis, PLLC and Stephan Zouras, LLP.  For purposes of the instant fee petition, Plaintiffs request the Court approve the hourly rates for Gibbons Leis, PLLC attorneys Philip J. Gibbons, Jr. ($485/hour) and Craig L. Leis ($425/hour). Although Stephan Zouras, LLP attorneys James B. Zouras and Andrew Ficzko contributed substantive and valuable legal work on this matter, Plaintiffs are not requesting that the Court review or approve the hourly rates charged by Stephan Zouras, LLP.

discovery and dispositive motion practice.  This case could have involved protracted litigation over the FLSA's overtime exemptions and the applicability of liquidated damages.  Instead, Mr. Gibbons was able to draw on his more than 20 years of employment law experience to obtain the information necessary to negotiate the instant settlement, without engaging in any wasteful litigation activities.    Even so, to facilitate settlement and maximize recovery for Plaintiffs, Plaintiffs' counsel negotiated a significantly reduced fee award of $16,000.00.  (*Id.*).

### 2.    Hourly Rates for Plaintiffs' Attorneys

Plaintiffs' counsel seeks the following hourly rates:  Philip J. Gibbons, Jr. ($485/hr) and Craig L. Leis ($425/hr).  (Gibbons Decl. ¶¶8 and 10).  For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The Fourth Circuit follows the locality rule, marking the venue where the court sits as "the first place to look to in evaluating the prevailing market rate." *Rum Creek Coal Sales, Inc. v. Capertone*, 31 F.3d 169, 179 (4th Cir. 1994).  Plaintiffs' counsel has provided a declaration attesting to their experience and background in support of the hourly rates sought.  (Gibbons Decl. ¶¶1-10).  In addition, Plaintiffs' counsel have attached the declarations of local plaintiff-side employment law attorneys familiar with the market rates for comparable work.  (Gibbons Decl. Exhibits A-L). Finally, Plaintiffs' Counsel has attached the Declarations of Joshua Van Kampen and Kevin Murphy of the law firm Van Kampen Law, P.C. who attest to the fact that the hourly rates of $485 for Philip J. Gibbons, Jr. and $425 for Craig L. Leis are appropriate in the Charlotte community based on their skill, experience and reputation.  (See Exhibits 2 and 3, attached hereto).   Based on these declarations, the Court should approve the hourly fees requested for Philip Gibbons and Craig Leis.

### 3.      Application of the *Johnson* Factors

The Fourth Circuit relies on the *Johnson* factors "sometimes to inform the calculation of the lodestar, sometimes to make upward or downward adjustments to it, and sometimes for both purposes." *MaCafee*, 738 F.3d at 89.  Here, Plaintiffs' counsel has already reduced its reasonable fee by almost 40% to facilitate settlement and maximize recovery for Plaintiffs. Accordingly, there is no reason for the Court to make any further adjustments.

### a.      The time and labor expended warrants approval of the requested fees.

The time and labor expended, as summarized above and detailed in the attached contemporaneous time records of Plaintiffs' counsel, was reasonably and necessarily expended to achieve success in this litigation.  (Gibbons Decl. ¶¶19-20).

### b.      The novelty and difficulty of the questions raised.

Defendants contend that Plaintiffs were subject to the FLSA's administrative exemption and thus not entitled to overtime pay.  Of the FLSA's various exemptions, the administrative exemption is most risky for Plaintiffs because it is complicated and encompasses many different types of job duties.  (*Id.* ¶11).

### c.      The skill required to properly perform the legal services rendered warrants approval of the requested fees.

Litigating this case required subject-matter expertise in wage and hour law.  Plaintiffs' counsel has extensive experience representing employees in FLSA wage and hour litigation.  (*Id.* ¶19).

### d.      Plaintiffs' Counsel's opportunity costs in filing this case warrant approval of the requested fees.

Plaintiffs' Counsel accepted this case on a contingency basis.  The case involved a small employer with a potential opt-in class of only fourteen (14) employees.  Based on experience,

opt-in rates in collective actions typically range from 10% to 25% of the potential opt-in class. Predictably, after notice was provided to eligible employees, the collective class was comprised of only two individuals. Moreover, the total amount of alleged unpaid overtime at issue in this case was very limited. Ultimately, to facilitate settlement, Plaintiffs' counsel agreed to significantly reduce the fees incurred in handling this lawsuit. Although the result obtained for Plaintiffs was very successful, it resulted in lost opportunity costs for Plaintiffs' counsel. (*Id*. ¶18).

### e. Plaintiffs' Counsel's requested fees are consistent with customary fees for like work.

The hourly rates at which Plaintiffs' counsel seek compensation are within the prevailing rates for similar work in this district as demonstrated by the attached declarations of plaintiff-side employment lawyers in this market. (*Id*. ¶¶7-8).

### f. Plaintiffs' Counsel expected a contingent recovery at the outset of litigation, which supports the requested fee.

Plaintiffs' Counsels' requested fee is reasonable because Plaintiffs' Counsel expected a contingent fee at the outset of the litigation. Plaintiffs' Counsel took on significant risk of non-payment, the burden of advancing litigation expenses, and the substantial opportunity cost of having to turn down other potentially lucrative work. (*Id*. ¶17).

### g. Time Limitations Imposed Under the Circumstances.

Not applicable.

### h. Amount in controversy and the results obtained.

Plaintiffs' Complaint alleged a single claim for unpaid overtime under the FLSA. Plaintiffs negotiated a favorable and successful settlement of their claim that provides for unpaid overtime and liquidated damages. Ultimately, Plaintiffs could have prevailed at trial, but

received significantly less money if the finder of fact agreed with LeadVision that Plaintiffs worked fewer overtime hours than alleged and/or that Plaintiffs were not entitled to liquidated damages. Ultimately, the settlement provides Plaintiffs with certainty, finality, and a generous compromise of their disputed claims.

### i.    Experience, reputation and ability of the attorneys.

Plaintiffs' lead attorney, Philip J. Gibbons, Jr. has substantial experience litigating wage and hours cases. (*Id.* ¶¶4, 5 and 19). Mr. Gibbons has recovered unpaid overtime wages for thousands of employees during his legal career. (*Id.*). Mr. Gibbons is respected by his peers and has been recognized as an accomplished plaintiffs' attorney in the area of employment law. (*Id.*).

### j.    Undesirability of the case within the legal community in which the suit arose.

This case involved a claim for unpaid overtime brought by a short-term employee (less than 4 months of employment) against a small employer asserting the FLSA's administrative exemption as an affirmative defense. Accordingly, the instant case ranks low in the hierarchy of desirable contingency-based employment law actions because: (1) the relatively small amount of unpaid overtime at stake; (2) the limited number of potential opt-in plaintiffs eligible to participate in a collective action; (3) the risk of the employer's inability to pay damages, fees and costs; and (4) the risk that the Court would find the FLSA's administrative exemption applicable to Plaintiffs. (*Id.* ¶17).

### k.    Nature and length of the professional relationship between attorney and client.

The relationship between Plaintiffs and Plaintiffs' Counsel is limited to this litigation and counsel does not anticipate any future work on Plaintiffs' behalf. (*Id.* ¶18).

### l.     Attorneys' fee awards in similar cases

In FLSA cases, "courts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery." *Vasquez v. Ranieri Cheese Corp.*, 2011 WL 554695, at \*4 (E.D.N.Y. February 7, 2011); *Spencer v. Cent. Services, LLC*, 2012 WL 142978 (D. Md. Jan. 13, 2012) ($11,500 in damages; $56,430 in attorney fees).

### B.     Plaintiffs did not have any unsuccessful claims and do not seek further adjustment of the lodestar.

Plaintiffs only assert a claim for unpaid overtime under the FLSA.  (Dkt. No. 8). Accordingly, all fees incurred in this litigation were related to successful claims and no additional subtraction of fees is warranted.  Similarly, Plaintiffs' counsel does not seek any additional adjustment to the lodestar based on the degree of success obtained on behalf of Plaintiffs.

## VI.     PLAINTIFFS' LITIGATION COSTS

As set forth in the Agreement, Plaintiffs' counsel requests the Court approve reimbursement of litigation costs and expenses in the amount of $1,000.00.  These costs are as follows: (1) filing fee, $400.00; (2) *pro hac vice* fee for James B. Zouras, $281.00; (3) *pro hac vice* fee for Andrew Ficzko, $281.00; (4) copying costs for Notice and Consent Form (100 copies x .20 cents), $20.00; and (5) postage costs for service of process and mailing Notice and Consent Form and return envelopes $18.00 (rounded down from actual postage costs).  (Gibbons Decl. ¶21).

## VII.     CONCLUSION

For the reasons stated above, the Court should approve the Settlement, including payment of reasonable attorneys' fees and costs.

/s/ Philip J. Gibbons, Jr.
Philip J. Gibbons, Jr., NCSB #50276
Craig L. Leis NCSB #48582
**GIBBONS LEIS, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, NC 28277
Telephone:      704-612-0038
Email: phil@gibbonsleis.com
            craig@gibbonsleis.com


James B. Zouras
jzouras@stephanzouras.com
Andrew C. Ficzko
aficzko@stephanzouras.com
**STEPHAN ZOURAS, LLP**
205 N. Michigan Ave., Suite 2560
Chicago, IL 60601
Telephone: (312) 233-1550
Facsimile (312) 233-1560


## CERTIFICATE OF SERVICE

This is to certify that on August 10, 2018 the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.


/s/ Philip J. Gibbons, Jr.

*Attorney for Plaintiff(s)*